UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| DELMA AMBURGEY, *Individually, as Administratrix of Jerry Michael Amburgey's estate and as Next Friend of J.A., a minor*<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendants. | Civil Action No. 7:11-CV-132-KKC<br><br>**OPINION AND ORDER** |

This matter is before the Court on the plaintiff's motion in limine (DE 60). For the following reasons, the motion is GRANTED in part, DENIED in part, and DEFERRED in part.

## I.  Background

The plaintiff Delma Amburgey's husband, Jerry Amburgey, died after having a severe reaction to the contrast dye administered to him during a CT scan at Whitesburg Medical Clinic.

Delma filed a complaint naming three defendants: Dr. Mahmood Alam, Mountain Comprehensive Health Corporation (which operates Whitesburg Medical Clinic), and the United States. She asserted six claims: personal injury, wrongful death, loss of spousal and parental consortium, breach of fiduciary duty, and breach of contract. Because Mountain Comprehensive Health is an agency of the United States, Delma asserted her claims under the Federal Tort Claim Act, 28 U.S.C.§ § 1346(b), 2671, et seq.

The United States moved to dismiss all of the claims. In response, Delma conceded her claims against Mountain Comprehensive and Dr. Alam were improper. She further conceded that her breach-of-fiduciary duty and breach-of-contract claims against the United

States were improper. The government argued that the remaining tort claims were untimely because Delma failed to present them to the appropriate federal agency within two years of the claim's accrual. The government argued that the claim accrued on the date of Jerry's death, not the date of the autopsy. This Court agreed with that assessment and determined it lacked jurisdiction over the tort claims.

The Court further found that, even if Delma's administrative claim were timely, her loss of consortium claims failed because she did not first assert those claims at the administrative level. Delma submitted her claims to the agency via Standard Form 95 and listed claims only for personal injury and wrongful death, not loss of consortium. Accordingly, the Court dismissed the consortium claims on this basis as well.

Delma appealed to the United States Court of Appeals for the Sixth Circuit. In its decision, the Sixth Circuit stated, "[t]he *sole issue* on appeal is whether Delma timely filed an administrative claim with the U.S. Department of Health and Human Services (HHS), *the answer to which determines the viability of her wrongful-death suit* against the United States." *Amburgey v. United States*, 733 F.3d 633, 634-35 (6th Cir. 2013) (emphasis added). The opinion discusses only the wrongful-death claim and whether it was timely filed with the federal agency. It does not discuss the consortium claims or this Court's alternative basis for dismissing them. The Sixth Circuit reversed this Court's decision and held that the wrongful-death claim did not accrue until Delma received the autopsy report and, thus, was timely. *Id.* at 641.

This matter is set for a bench trial commencing March 7, 2016. Delma's motion raises several issues.

## II. Analysis

### A. Calculating present value

In *Monessen S.R. Co. v. Morgan*, 486 U.S. 330, 339 (1988), the Court held that "damages awarded in suits governed by federal law should be reduced to present value." (Citing *St. Louis Southwestern R. Co. v. Dickerson*, 470 U.S. 409, 412 (1985)). This is because "the damages award is paid in a lump sum at the conclusion of the litigation, and when it – or even a part of it – is invested, it will earn additional money." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 536 (1983). Without a discount, the plaintiff would get "all of his future wages long in advance and would be able to invest the lump sum and realize earnings on such investment during the intervening period." *Beaulieu v. Elliott*, 434 P.2d 665, 671 (Alaska 1967).

Thus, "in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award." *Pfeifer*, 462 U.S. at 537 (citation omitted). "The discount rate should be based on the rate of interest that would be earned on the best and safest investments." *Id.* (quotations and citation omitted.)

The damages calculation should also take into account inflation however. *Id.* at 538. Delma asks the Court to take inflation into account using the total-offset method adopted in *Paducah Area Public Library v. Terry*, 655 S.W.2d 19 (Ky Ct. App. 1983). Under this method, it is assumed that interest rates and inflation rates "totally offset each other" and, thus, the damages award need not be discounted by the interest rate. *Id.* at 25. Accordingly, there is no need to introduce evidence of either the interest rate or the inflation. *Id.* at 26.

3

The Supreme Court has recognized this methodology as acceptable. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 544-45 (1983). This Court recognizes, however, that it is not bound to follow the total-offset method simply because Kentucky courts do. "The admissibility of expert testimony is a matter of federal rather than state procedure. Therefore, whether an expert should be permitted to testify is controlled by federal law." *Brooks v. American Broadcasting Companies, Inc.*, 999 F.2d 167, 173 (6th Cir.)

To the extent that the plaintiff seeks to exclude any expert testimony regarding methods of calculating the present value of Jerry's future lost wages other than the total-offset method, the motion is DENIED. Delma's argument that the total-offset method prevents the introduction of misleading and confusing evidence to the jury is not applicable to this bench trial. To the extent that Delma requests that the Court calculate the present value using the total-offset method, the Court will DEFER ruling on this until any evidence on the present value of Jerry's future lost wages is presented at trial.

### B.  Prior arrests or crimes charged

Delma seeks to exclude any evidence or questions regarding whether she has ever been arrested of or convicted of a crime. The Court hereby ORDERS that the motion is GRANTED. The government states that it does not intend to introduce any such evidence. If the government should find the introduction of such evidence admissible or the asking of such questions appropriate, it should approach the bench to obtain permission.

### C.  Statements that the United States employees or agents perform their jobs well

Delma seeks to exclude any testimony that the United States' employees perform their jobs well. She argues that this is improper character evidence under Federal Rule of Evidence 608. That rule governs the admissibility of evidence regarding a witness's character for truthfulness or untruthfulness. Accordingly, Rule 608 does not require that evidence regarding

how well the United States' employees perform their jobs be excluded. Nevertheless, neither party has explained precisely what the testimony at issue is or how it will be introduced. Accordingly, the Court DEFERS ruling on this objection until trial. Plaintiff's counsel should reassert this objection at that time.

### D. Evidence regarding contributory negligence

Delma seeks to exclude any argument or evidence that either she or Jerry should be apportioned any fault for Jerry's death. The Court GRANTS this motion with regard to any argument that Delma should be apportioned any fault. It appears that the government does not intend to offer evidence or argument that any fault should be apportioned to Delma. With regard to Jerry, however, KRS § 411.182 mandates that this Court make findings indicating the percentage of the total fault of all parties. Accordingly, the motion is DENIED with regard to evidence or argument that any fault should be apportioned to Jerry.

### E. Undisclosed medical literature

Delma moves to exclude any medical literature that the government did not disclose during discovery. Neither party explains precisely what medical literature is at issue or how it will be introduced. The Court DEFERS ruling on this motion until trial. Delma should reassert her objection at that time.

### F. Delma's current relationship

Delma seeks to exclude any evidence that she is currently in a domestic relationship with another individual. The government argues that this information is relevant in determining Delma's "involvement, knowledge, and state of mind in the months leading up to Mr. Amburgey's death." The Court GRANTS this motion. The government does not explain how

5

Delma's involvement, knowledge, or state of mind prior to Jerry's death are relevant to this wrongful-death action.

### G. Jerry's marijuana use

Delma explains that Jerry's autopsy showed levels of THC indicative of marijuana use. The government argues this is relevant to 1) Jerry's "compliance generally with the directions of his health care providers and his general failure to report this relevant information to his treating physicians" and 2) as a possible reason that Jerry signed the consent form without reporting the previous reaction. This motion is GRANTED. There does not appear to be any evidence that Jerry's marijuana use contributed to his death. Thus, Jerry's compliance with any directive to refrain from marijuana use and his failure to report his use to healthcare providers is irrelevant. Further, while the fact that Jerry failed to report the previous reaction to contrast dye may be relevant, the reason that he failed to do so is not.

Dated March 2, 2016.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY